Moncrief, J. (Dissenting.)
Assuming, for the present purpose, that such a usage, or custom of the trade, as the Referee has stated, was sufficiently proven to admit the finding of fact to be correct, the material question arises, whether, under such circumstances, the conclusion of law thereon, as found, can be sustained.
The custom, or usage, was in no wise material, or necessary or proper, to explain or give character or meaning to the power actually bestowed upon the broker. The words are clear, plain, and unambiguous. The plaintiffs authorized the broker to sell the grain, and nothing more. The authority, of and in itself, neither by express terms nor by any implication, gave to the broker the right to treat the rye as his own property, make out a bill therefor in his own name, collect the money, or receipt for its payment. The broker, as such, had no such authority. A sale being made, his duty, office and function was at an end. His name is indicative of restricted authority: he is the negotiator, or middleman (2 Barn. & Ald., 137, 143, 148.) It was not sought to show that a usage or custom of the trade existed, of which, it being general, the plaintiffs might be presumed to have knowledge, and have given the employment intending and implying the power to receive payment. Nor was it proven that either the defendant or the plaintiffs knew of such a custom or usage, and therefore could be assumed to act with such intent in the sale and purchase of the grain. The plaintiffs were not acquainted with such a usage or custom. The defendant said he had paid the money “in the usual course of businessnot that he knew or believed a usage or custom existed to pay the broker the avails of the plaintiffs’ rye. The defendant was told by the broker, at the time of the payment to him, that the plaintiffs “had drawn for the amount.” If this statement was true, and the defendant, believing in its truth, in good faith had paid the money, the payment was made, not in the usual course of business, perhaps, as arising from a usage or custom to pay the broker, as for his own goods, but from an implied authority to the broker as an agent to collect the money to meet the draft of his principal. And this was the case with the other lot of rye sold by this *353 broker for the plaintiffs, in which an implied authority to pay him was found by the Referee. The defendant knew the plaintiffs were the owners of the rye. No other than these two transactions were shown to have been made by the broker for the plaintiffs. There was, therefore, no implication of authority from previous transactions. It does not appear that the plaintiffs ever ratified the payment: on the contrary, they claimed to recover from the defendant, made out a bill, and demanded the money. Comstock, J., in 3 Kernan, 632, says: “ Á principal is bound only by the authorized acts of his agent. The relation of principal and agent may be proved by the instrument, (or verbal commission,) which creates it; and beyond the terms of the instrument, or of the verbal commission, it may be shown that the principal has held the agent out to the world in other instances as having an authority which will embrace the particular act in question. ITcnow of no other mode in which a controverted power can be established.”
The proposition, that persons, engaged in a particular trade, at a particular place, can, by the custom or usage adopted and regulated by themselves, create a power beyond what is actually conferred or necessarily implied, depriving an owner of'his property, the possession of which he had not parted with until a sale to the purchaser, seems to me to be so fraught with mischief, as well as unsoundness, as to require only its announcement to meet with repudiation. The grain was not delivered to the broker. The custom or usage would transform him into a factor in possession of the goods, or with the indicia of title or ownership. (2 Barn. & Ald., 137, 143, 148.)
I think the Referee erred in his conclusion of law upon the facts found by him. A new trial should, therefore, be directed, &c.
Judgment affirmed, with costs.